The opinion of the court was delivered by
Breaux, J.
This controversy involves the settlement of thé succession of James Hoss, and the liquidation and termination of the affairs of the commercial firm of Hoss & Noel.
Hoss died in 1873; Noel, the surviving partner of the firm, administered its affairs as liquidator about one year.
In January, 1875, he surrendered the liquidation to Jacob Hoss, administrator of the succession of James Hoss.
The partnership interest of the deceased was two-thirds, and that of the surviving partner Noel, one-third. During the time that he was in possession Noel sold goods, made collections and some payments.
*1024 The entire assets of the firm of which he had the control amounted to $43,309.35, appraised value. There were a number of uncollected notes and accounts.
With the consent of the surviving partner and that of the administrator they were placed in the hands of an attorney for collection, except those retained by the acting liquidator.' Although the attorney was active and vigilant in his endeavors to collect, part of the claims were uncollected. Of those collected and handed to the administrator, the accounts were not afterward rendered to the satisfaction of the surviving partner.
On the 17th day of February, 1877, Hoss, administrator, filed his first account of the administration, which was homologated.
On the 14th of June, 1878, an administrator’s account was filed by him, which was also opposed by the opponent in the present litigation. The District Oourt dismissed the opposition; on appeal to this court the judgment of dismissal of the opposition and homologating the account was affirmed. Sue. of Hoss, 33 An. 1257.
All items in these accounts are now settled, and have the effect and force of res adjudieata as to all persons made parties thereto.
The only questions at this time arising which have any direct relation to these accounts are as to whether counsel’s fee charged to the partnership, also the commission of the administrator, should be rejected or reduced.
In his (Noel’s) opposition to the account filed in 1878, and duly homologated, these charges were objected to.
In the account opposed — i. e., accounts of 1878 — they are carried as having been paid.
It is no longer possible to question their correctness or truthfulness of the payment. This ends all controversy about these two items of indebtedness as charged.
The next contention connected with these homologated accounts relates to the interest which the claim in the name of Jacob Hoss, against the partnership, should bear.
The opponent contends it should be 5 per cent, per annum.
The administrator allows interest at 8 per cent on this claim.
On the tableau of debts filed in 1877 we find the following:
“ Balance of account due Jacob Hoss by Hoss & Noel is shown by books of said firm, $1071.78, with interest from Jan. 1, 1874.”
The rate of interest is not stated.
*1025 We have read carefully the note of evidence taken at the time this account was homologated, and have not found any statement of interest on this claim.
If the administrator relies upon entries in the partnership book.
We have failed, after examination, to find any entry made which can bind the partnership to pay more than 5 per cent. No promise to pay eight per cent, is proven.
The interest is therefore correctly fixed in the judgment appealed from — at 5 per cent.
The assets of Hoss and Noel (except those administered and distributed by Noel as acting liquidator), together with the individual property of the deceased partner, were under the gestión of the administrator.
There will not be any necessity of determining all the questions arising during an administration which remained unsettled and in litigation considerable of the time during fifteen long years — oppositions, judgments of homologation, agreements of counsels have lessened the work necessary to determine the finalissues.
The administrator appeals from the judgment of homologation of his final accounts and supplement thereto, both of which Noel, the surviving partner, opposes.
To retain the order in which the objections in the oppositions are presented, we make mention that the first item on the debit side of the account is increased to the amount alleged as correct in the opposition and conforms to the prayer of the opposition.
In the proposition numbered 2, the opponent alleges that certain claims due the firm were collected by the administrator, but that he has failed to account for them.
That on the trial of the opposition to the first final account it was admittted that these claims had been collected.
That they aggregate the sum of $2754.61, as follows:
Amount Collected of Succession of Thompson................................................................... $470 00
*• Burns...................• ................................... 378 00
“ Gatlin........................................................... 182 07
“ McAlister............................................................... 300 00
“ G arli clc.................................................................... 03 42
“ Bickman..................................................................... 70 70
k{ {Scott............................................................................ 20 33
“ Boole..................................................................... 300 10
u Miller............................................................ 40 09
“ Oauthon.................................................................. 36 00
Cane judgment.................................................................................. 129 90
Accrued interest.............................................................................. 100 00
•Total $2,75-1 01
*1026 It is virtually admitted that the amount of $129.90 is included in an item on the debit side of (the column; leaving-a balance claimed to have been admitted and which it is contended should be accounted for of $2624.71. Of this amount $1215 and $1076 were accounted for afterward, leaving $333.71 to be added in the court a qua’s decree.
Proposition third of the opposition is directed against the claim of Phelps & Co. as carried on the account. It is no longer owned by that firm.
The claim had been acknowledged by the administrator. There was no question about its validity. They were opponents’, seeking to bring about the settlement of the succession, and their rights as creditors were nob questioned. In 1881 they chose to sell their claim to one of the attorneys of the estate for an amount less than its face value.
Some time after, the administrator personally became the owner of one-half of the claim. It was transferred to him by his attorney. It is contended that the purchase enured to the benefit of the succession. It is conceded by the administrator that the opposition is well founded in respect to his half interest in the judgment of Phelps & Co.
Respecting the attorney’s half, it is argued that a judgment is not a litigious right after the time within which to appeal has elapsed; that an attorney at law may buy a judgment.
The business relations between the attorney and the administrator are so intimate and disinterested — advice of the former so essential, that it is difficult to reach the conclusion that a law prohibiting the administrator from purchasing claims against the succession he administers should not apply to his attorney.
Their confidential relations should preclude the attorney from becoming the owner of clainjs which may conflict with those of other creditors or of the heirs of the succession. In the case at bar this contingency did not arise, nor has the estate been made to incur any loss by the purchase; on the contrary, as the litigation terminates the interested parties are largely benefited. A judgment has been settled at a considerable reduction with funds not of the succession at the time, and the estate relieved from the payment of a goodly portion of a large debt.
The case of Stockton vs. Ford, 13 U. S. Reports 682, in which the rule is laid down that if an attorney in the absence and without the consent of his client( makes such a "purchase, a court of equity will *1027 fasten upon the purchase a trust, without any inquiry into the motives or intentions of the attorney in making the purchase, and compel him to give up its benefits and advantages in the reimbursement of the purchase money, is quoted as decisive upon the subject. We are impressed with the force of the reasoning and the necessity of the rule. While in this case there was no advantage taken and none sought, yet essential provisions in matters of estates generally can not be dispensed with on the ground that the particular act in question has proven beneficial to the succession.
Properly, on payment of the purchase price the purchased judgment was carried for the benefit of the estate by the judgment appealed from, and the payments made by the administrator on this judgment since its purchase were correctly disallowed; also is correct the judgment appealed from, in so far as relates to the Curry claim, for the same reasons.
After these deductions, the differences between the administrator, and the opponent are not very great.
The administrator’s counsel in his brief states: “If we are not correct, $1403.89 must be added to $2074.50, making the sum of $3478.39 due by the administrator subject to deduction.”
While the opponent contends that $3812.10 is the balance.
By adding the amount of $333.71, before mentioned (the correctness of which the administrator denies), to the amount admitted, viz, $3478.89, the balance of each is similar, viz, $3812.10.
There are debts due which must be paid before a division of a remainder caribe made between the parties.
One of these debts is a note due to Mayer Brothers, amounting to $1322.60, with 8 per cent, interest from September 20, 1873; the other to the administrator, of $1071.78, bearing interest at 5 per cent, from January 1, 1874.
Two payments have been made on the Mayer & Co.’s note, aggregating $693.62, and $510.92 on the Hoss claim.
It is proven that $500 of this amount was paid March, 1881, and we will assume that the remainder was paid about the same time, the time of payment not being proven.
The interest on this claim from September 25, 1873, to May 26, 1877, amounts to $387.98. On the Hoss claim, from January 1, 1874, to the same date, it amounts to $182.32, making the total of both claims at that time, $2964.74.
*1028 The account on which these claims were carried was homologated on the 26th May, 1877.
In the judgment appealed from, interest was calculated to the last mentioned date, and as just stated on the ground that the administrator had funds in hand sufficient to pay at that time.
It is true that the administrator had $6621.22 at the time that his account was homologated, May 26,1877.
On June 14, 1878, when his second account was filed, payments made had reduced the amount to $2203.97, to the credit of the succession.
It is urged that the administrator paid the fee of attorneys and retained his own commission, claims not bearing interest, and allowed those bearing interest to continue unpaid.
The claims had all been homologated and made a judgment of the court.
The objections would prevail if the account had not been homologated. More than ten years ago these claims were ordered to be paid. They are protected by the plea of res adjudicada. Their correctness or incorrectness are beyond our control.
Ordinarily the interest-bearing, claims should be the first discharged, but it may be, at times, to the interest of a succession that non-interest bearing claims be paid before any other.
As it is evident that the administrator had not collected all the amounts due the estate on the 26th May, 1877, we will fix the date from which the interest shall be calculated from the 1st of January, 1883, after which it does not appear that he has made any collections.
There can be no good reason given for the postponement of payment after that time.
This date makes it absolutely certain that he had an amount to pay, and that there was not the least reason for further delay. The pending suits about that time and the sales of property urged by the administrator as the causes of delay are no longer causes for delay after the first of January, 1883.
In 1881 the sum of $3000 was applied to the purchase of a judgment against the estate, amounting to $15,000; although the funds used to effect the purchase belonged to the attorney and the administrator, their use as made has some little connection in fixing the date of interest.
*1029 We pass without comment the plea of prescription decided in the elaborate opinion of the learned judge of the District Court.
Counsel for the administrator has not argued that plea in his brief.
We presume it is abandoned; if not, the plea not being considered good by us, it is overruled.
The administrator from time to time has rendered accounts of his gestión which has been a continuing acknowledgment of his obligation to account and of the rights of the partner in the resulting residuum.
In matter of the responsibility of the acting liquidator, it is shown that in the inventory the assets of the firm, in notes and accounts, were $33,058.65.
They were appraised $27,955.67.
These were received by the acting liquidator.
His books and vouchers were deposited in the office of Wise & Herndon, attorneys, and were destroyed at the time that their office was destroyed by fire.
Noel accounts for all the merchandise he sold.
It exceeds the appraised value of the inventory $5258.95.
This includes the profits made on the goods sold under his gestión as acting liquidator.
With reference to the notes and accounts he received, he accounts, for their appraised value.
The administrator seeks to hold him responsible for their face value, a difference of. $5102.98.
We only have the totals. No part of the evidence discloses what notes and accounts were delivered to him, and what part was collected.
We only have his evidence on the subject.
His statement as to the correctness of his account is not impeached.
We therefore conclude that the amount of $27,955.67 he admits to have collected is the amount he has collected.
We have followed the development of this prolonged litigation from its incipiency to the present time, and find that the District Judge under whose immediate presence acts of administration were performed, by whom orders were given and judgment signed, has done substantial justice between the parties.
We amend his judgment on the two claims outstanding.
*1030 It is therefore ordered, adjudged and decreed that the administrator pay on the balance of account stated in the homologated tableau of debts as due Jacob Hoss by the'firm of Hoss & Noel the principal of said debt, §1071.78, and legal interest thereon from the 1st of January, 1874, to January 1, 1883, less a credit thereon of §510.92 paid January, 1884, and that he pay the claim stated in said tableau as a note for §1322.60 due Mayer Bros, by said firm of Hoss & Noel, the full principal of said note, with 8 per cent, per annum interest from September 25, 1873, till paid, less a credit thereon for the sum of §673.62 paid March 1, 1881; but that said administrator shall take no credit in his account for any part of the interest in said note accruing from and after the 1st day of January, 1883.
In every other respect (except as amended by the above decree) the judgment appealed from is affirmed, at appellee’s costs.